UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JENNIFER R.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:22cv431 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

     This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Benefits under the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

     The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since June 21, 2019,

the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: arthritis, migraines, major depressive disorder, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and can sit, stand, and/or walk for six hours in an eight-hour workday, except: the claimant is unable to crawl or climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. She can never reach overhead and may frequently reach in all other directions with the bilateral upper extremities. In addition, the claimant is able to understand, remember, and carry out detailed, but not complex tasks. She can tolerate occasional changes in work setting. She can tolerate brief and superficial interaction with coworkers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 24, 1972 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 21, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 14 - 25 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on May 23, 2023. On August 29, 2023, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on October 6, 2023. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ erred in her evaluation of the medical opinion from consultative examiner Dr. Coulter-Kern. Dr. Coulter-Kern had diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, and generalized anxiety

4

disorder. He opined that Plaintiff would have moderate difficulties understanding, remembering and carrying out instructions, and maintaining concentration and attention. Dr. Coulter-Kern also assessed a moderate to severe limitation in responding appropriately to supervision and coworkers and coping with work pressures.

Plaintiff argues that the ALJ improperly rejected this opinion. Plaintiff notes that the ALJ found that the opinion failed to define the terms "moderate" and "severe", and that they were not equivalent to the terms used in the disability process. Plaintiff points out that the Listings define "moderate" as when a claimant's functioning is "fair", and argues that a commonsense reading of "severe" or "moderate to severe" would imply that Plaintiff would have a more than moderate limitation, or equivalent to a moderate to marked limitation.

There is precedent for accepting "moderate to severe" as a valid measure of functioning and worthy of consideration. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 696 (7th Cir. 2016); *Townsend v. Kijakazi*, 2023 WL 3022548, at *11 (E.D. Wis. Apr. 20, 2023); *Benton v. Colvin*, 2013 WL 4519649, at *6 (S.D. Ind. Aug. 26, 2013). Additionally, as Plaintiff argues, the regulations, case law and the overarching duty to develop the record suggests that ALJs may be required to re-contact a physician for clarification if there is concern over the basis for the limitations. *See* 20 C.F.R. § 404.1519p (If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report); 20 C.F.R. § 404.1520b(b)(2)(i) ("We may re-contact your medical source"); *Cheryl T. v. Kijakazi*, 2022 WL 3716080, at *10 (N.D. Ill. Aug. 29, 2022) (In any event, the cure for these perceived ambiguities was for the ALJ to seek clarification from Dr. Khaja, not to reject

5

his opinion out of hand).

Because of these errors in the ALJ's evaluation of Dr. Coulter-Kern's opinion, remand is required.

Plaintiff next argues that the RFC assessment was not supported by substantial evidence. Plaintiff points out that the ALJ determined that Plaintiff's migraines were a severe impairment, but failed to explain how the symptoms were factored into the RFC assessment. At the hearing, Plaintiff testified that her migraine headaches would cause her to be bedridden for multiple days and/or occur approximately ten to fourteen times per month. (Tr. 50-51). The headaches could be triggered by carrying or wearing clothes on her back and she experienced difficulty lifting during the episodes. (Tr. 51). Plaintiff's specific complaints related to migraine headaches were largely unmentioned in the decision other than a brief remark that "ordinary activities can trigger a headache." (Tr. 17). The decision also omitted discussion or even mention of Plaintiff's self-completed headache questionnaire from February 2021. (Tr. 216-18). This form detailed that Plaintiff was required to go in a "dark room" during a headache and the pain impacted the front-left side of her head. (Tr. 216-17). The questionnaire also detailed a 2015 ER visit due to headache pain and chiropractic treatment. (Tr. 217). Also, SSR 19-4p13 directs the adjudicator to consider the observations of the headache events, response to treatment, remarkable or unremarkable findings on tests in addition to the diagnosis of the headache disorder in the treatment records. The record indicates that Plaintiff was prescribed medications such as Topamax and Imitrex along with ongoing complaints of the diagnosis. (Tr. 364, 717, 1072). Also, she had been approved for ten percent service-connected VA disability for migraine headaches. (Tr. 370).

Plaintiff also argues that the ALJ's finding that Plaintiff could perform light exertional activities with occasional stooping, kneeling, and crouching did not comport with with the internal medicine consultative examination in the record. (Tr. 17). Dr. Siddiqui's consultative examination indicated a flexion of only forty-five degrees. (Tr. 899). Plaintiff posits that such uncontroverted significant clinical findings casts doubt on her ability to perform light work and on her ability to stoop. *Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013). This Court holds that the ALJ erred by finding that Plaintiff could stoop on an occasional basis without resolving the inconsistency between such a finding and the limited lumbar flexion noted in the examination of Plaintiff's back.

Plaintiff further argues that the RFC assessment did not include any concentration, persistence and pace limitations to account for Plaintiff's moderate limitations in that domain. (Tr. 16). *O'Connor-Spinner*, 627 F.3d at 620-21 (reversing ALJ's decision because limitation to "routine, repetitive tasks with simple instructions" did not account for plaintiff's limited abilities in concentration, persistence, or pace). Plaintiff contends that the facts in the instant case are even more compelling than those in *O'Connor-Spinner* because, here, the ALJ's RFC allowed for the Plaintiff to perform "detailed" tasks, as opposed to simple tasks. (Tr. 17).

Plaintiff's medical records routinely documented concentration/memory difficulties (*See e.g.* Tr. 895, 976-77, 987, 1041), significant stressors (Tr. 598, 616) and that Plaintiff had substantial deficits on neurocognitive testing at the June 2021 consultative examination. (Tr. 910). Such findings were corroborated by the Plaintiff's written evidence(forgetfulness, difficulty completing tasks) and testimonial evidence (memory difficulties). (Tr. 44, 230, 232).

In response, the Commissioner relies on *Parrott v. Astrue*, 493 F. App'x 801 (7th Cir.

7

2012), for support that the ALJ was not required to provide additional restrictions to account for the moderate limitations in concentration, persistence and pace. But, unlike in *Parrot,* Plaintiff's hearing did not include testimony from an agency psychological expert that supported the detailed but not complex task limitations due to "relatively stable" symptoms. Moreover, it has been long established that moderate limitations in concentration, persistence and pace require more than a mere limitation on the task or SVP level in the hypothetical. *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir.2009). As indicated in the consultative examinations and elsewhere in the record, Plaintiff had consistently averred difficulty with memory and concentration throughout the period at issue. (*See e.g.* Tr. 598, 616, 895-96, 910-11, 976-77, 987, 1041).

Caselaw repeatedly instructs that remand is necessary where the ALJ was impermissibly formulating "her own independent medical opinion regarding the effects (or lack of effects) of [the claimant's] moderate difficulties, of concentration, persistence or pace." *Pound v. Comm'r of Soc. Sec.*, 2022 WL 1771766, at *3 (N.D. Ind. June 1, 2022) (quoting *Warren v. Colvin*, 2013 WL 1196603, *5 (N.D. Ill. Mar. 22, 2013)). Moreover, as courts have routinely found, a mere limitation to simple or unskilled tasks does not in itself accommodate Plaintiff's documented complaints of limited concentration. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.")

The lack of a supportive basis for the RFC was also demonstrated by the ALJ's flawed analysis and finding regarding Plaintiff's VA service-connected disability. The decision incorrectly stated that she was given a 70% disability rating (Tr. 22) when the record actually indicated a 90% rating along with an unemployability determination (70% for PTSD alone). (Tr.

8

46, 370). A VA rating that a claimant's impairments prevent her from engaging in substantially gainful employment is "practically indistinguishable" from the Social Security Administration's disability determination. *See Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017); *Crick v. Kijakazi*, 2022 WL 3098389, at *4 (E.D. Wis. Aug. 4, 2022) (remanding where ALJ did not clearly afford the VA rating proper consideration or weight). Thus, it was error for the ALJ to incorrectly assess Plaintiff's VA disability rating. Clearly, remand is warranted for a proper discussion and evaluation of Plaintiff's RFC.

Lastly, Plaintiff argues that the ALJ erred in the evaluation of Plaintiff's symptoms. The regulations provide that the ALJ must consider all the "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Cases make clear that the ALJ must specify the reasons for her findings so that the applicant and subsequent reviewers will have a fair sense of the weight given to her testimony. *Golembiewski*, 322 F.3d 912, 916 (7th Cir. 2003); SSR 16-3p.

In her symptom evaluation, the ALJ mentioned that Plaintiff managed her pain with Naproxen and chiropractic treatment, but had not been recommended to engage in a "more invasive" regimen. (Tr. 22). The ALJ does not explain why Plaintiff's treatment indicated that her pain levels were not as severe as alleged, contrary to the "specific reasons" requirement of SSR 16-3p. Also, the decision does not acknowledge that Plaintiff's treatment was during the height of the COVID lockdowns and she testified that treatment options were limited due to COVID protocols at the VA. (Tr. 53-54). Nor did the ALJ suggest or discuss which particular treatment would have reduced Plaintiff's symptoms. (Tr. 22). Furthermore, the Plaintiff's testimony

9

intertwined her joint pain with her headache episodes. (AR. 51-52).

Furthermore, in general, the decision also does not explain why some evidence was more persuasive than others with respect to Plaintiff's allegations of pain. (Tr. 22). While the ALJ's decision mentioned that Plaintiff had longitudinally displayed normal strength, normal sensation and full grip strength, she acknowledged there were diminished range of motion and tenderness findings in the record. *Id*. Such findings as tenderness and limited range of motion would appear to corroborate Plaintiff's complaints of pain rather than detract from them.

The ALJ also improperly focused on the fact that Plaintiff was denied personal caregiving services through the Program of Comprehensive Assistance for Family Caregivers. (Tr. 22). Plaintiff explains that the ALJ's reliance on this denial was incorrect because the standard for caregiving services was that the claimant must have an inability to perform activities of daily living and/or require a need for supervision, protection or instruction. (Tr. 968). In fact, it was uncontroverted that the Plaintiff relied on her husband to assist with many of her self-care tasks and household chores (thus reducing the need for VA funded services). (Tr. 55). Moreover, the standard for receiving disability benefits differs from the standard for receiving caregiving services because, to receive disability benefits, the applicant is not required to show an inability to safely perform activities of daily living. (Tr. 968). *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (disabled for purposes of Social Security does not mean bedridden 24 hours a day, 7 days a week, 365 days a year, without the ability to do absolutely anything at any time.).

Additionally, the ALJ's consideration of Plaintiff's daily activities was flawed. The decision contains little to no analysis of Plaintiff's restrictions in activities of daily living. In fact, Plaintiff testified that she rarely left the home due to PTSD and relied on her husband for

household chores. (Tr. 38). Furthermore, she only reported to be engaged in sedentary activities such as reading and watching television. (Tr. 231). These minimal activities at home do not require her to meet minimum standards of performance and adhere to schedules. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citations omitted) ("an ALJ cannot disregard a claimant's limitations in performing household activities"). The ALJ further erred by not even mentioning or evaluating the third-party statements from her fiancée dated February 2021. (Tr. 235-242). The fiancée indicated that Plaintiff required assistance in self-care and had difficulty with forgetfulness. (Tr. 236). He also noted poor motor control and an ability to follow instructions only seventy percent of the time. (Tr. 24). SSR 16-3p also required the ALJ to fully consider personal observations from Plaintiff's family members.

Due to all of the above errors in the ALJ's evaluation of Plaintiff's symptoms and treatment, remand is waranted on this issue also.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: October 20, 2023.

s/ William C.  Lee
William C. Lee, Judge
United States District Court

11